COVINGTON, Judge.
In Bowen v. State, 791 So.2d 44 (Fla. 2d DCA 2001), we reversed Bernice Bowen’s *543 convictions for accessory after the fact to escape and to the first-degree murder of Tampa Police Detectives Randy Bell and Ricky Childers. We remanded for a new trial in light of the fact that Bowen’s defense had been prejudiced since these violations were tried together with another charge.[1] On retrial, Bowen was again convicted of these three offenses. In this appeal, Bowen alleges that insufficient evidence was presented to convict her, that several evidentiary errors were committed, and that she was improperly sentenced. Upon careful review of the record and due consideration of the briefs filed by the parties as well as the oral argument, we find no reversible error and affirm.. , .
The facts established in the first trial are set forth in significant detail-in Bowen, 791 So.2d 44. In essence, the charges against Bowen stem from the fact that even after she became aware that her boyfriend, Hank Earl Carr, had killed two police officers, she continued to deceive law enforcement about Carr’s true identity. At trial the State argued that Bowen engaged in this behavior as part -of a planned pattern of deceit. The State submitted that Bowen’s goal was to stall law enforcement so that Carr would have an opportunity to escape. Bowen acknowledges that she did indeed provide false information to law enforcement as to Carr’s true identity. However, she says that was before she knew the police officers had been killed. Bowen argues that once she became aware of the officers’ deaths she fully cooperated with law enforcement.
These tragic events began to unfold on the morning of May 19, 1998. Around 9:30 a.m., Bowen’s son, Joey Bennett, suffered a fatal gunshot wound while in the apartment that Bowen shared with Carr. Police officers took Carr to the police station so that Detectives Bell and Childers could question him. Bowen was - also taken to the police station for questioning, although separately. As she had done earlier in the day, Bowen told police that Carr’s- name was Joseph Bennett. That was, however, an untrue statement. Joseph Bennett was the name of Bowen’s former husband, who resided in Ohio. In addition, Bowen gave differing stories to law enforcement concerning her relationship with Carr. She first told police that Carr was her husband and the father of Joey Bennett; she later said that Carr was her ex-husband; at the police station she told Detective Julia Mas-succi that Carr was her boyfriend.
Detectives Bell and Childers took Carr back to the apartment sometime after 1:00 p.m. for further questioning. Around 2:00 p.m., while they were returning to the police station, Carr was able to escape from the detectives. He shot and killed both officers.
Detective Massucci, who was still at the police station with Bowen, became aware of the killings and informed Bowen that the two officers had been shot. She knelt down in front of Bowen, took Bowen’s hand, and told-her the police needed her help. Detective Massucci told Bowen that she knew she had been through a lot with the loss of her son, Joey, and now the lives of two police officers also had been lost. The police needed to know the identity of the man who had committed these acts so they could find ‘him. Bowen said she would help. However, the assistance Bowen provided was to tell Detective Massucci that the man they were looking for was named Joseph Bennett.
*544 Detective Donna Keene also advised Bowen of the deaths of the police officers and Carr’s escape. As Detective Massucci had done, Detective Keene asked Bowen for her help in providing information concerning Carr. Bowen responded by telling Detective Keene that her boyfriend’s name was Joe Bennett. Subsequently, Bowen gave Detective Keene other names, including Boo, Earl Carr, and Hank, but she did not give the entire name Hank Earl Carr.
The crime of accessory after the fact is defined by section 777.03(1), Florida Statutes (1997), as:
Any person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, who maintains or assists the principal or accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a felony or been accessory thereto before the fact, with intent that the offender avoids or escapes detection, arrest, trial or punishment, is an accessory after the fact.
As this court set forth in Bowen, the crime of accessory after the fact has five elements. That is, the State is required to prove:
(1) the crime was committed by Carr; (2) Ms. Bowen knew Carr had committed the crime; (3) Ms. Bowen thereafter “maintained, assisted or gave any other aid” to Carr; (4) Ms. Bowen gave the aid with the intent that Carr avoid or escape arrest; and (5) Ms. Bowen was not related to Carr by blood or marriage.
Bowen, 791 So.2d at 50.
As to the first element, the record supports the conclusion that Carr committed the crimes of first-degree murder and escape, and Bowen does not contest this fact on appeal.
The second element of the offense requires the State to prove Bowen knew Carr committed the crimes. In order to comply with this requirement, the State must establish “that Ms. Bowen either directly knew or was provided sufficiently reliable information of facts that would give a reasonable person sufficient basis to believe that Carr had committed the crime alleged.” Id. at 51. The testimony of Detective Massucci, as well as that of Detective Keene, establishes that Bowen was informed of the murders and Carr’s escape.
Next the State must prove that after Bowen was made aware of the murders of the police officers and of Carr’s involvement, she provided some maintenance, assistance, or aid to Carr. After both Detectives Massucci and Keene told Bowen that Carr had shot Detectives Bell and Childers and that Carr had escaped, Bowen continued to deceive the police as to Carr’s identity. By telling the police that Carr’s name was Joseph Bennett, Bowen assisted and aided Carr in his attempted escape from law enforcement.
 The fourth element of the crime of accessory after the fact requires proof of Bowen’s intent. “The State must prove that any aid Ms. Bowen gave to Carr was given with the specific intent to aid him in avoiding punishment.” Id. at 53. A defendant’s intent is not often shown by direct evidence, and it may very well be that the only available proof is in the form of circumstantial evidence. Id. at 52. Bowen submits that she had no intent to aid Carr, but rather she wanted to assist law enforcement with Carr’s capture.
Bowen’s argument centers on the notion that despite her earlier false statements to the police, she later cooperated with law enforcement by providing the name and *545 address of Carr’s mother, informing the police of the names of several of Carr’s friends, agreeing to travel to the service station where Carr was holding an individual hostage, and subsequently providing law enforcement with Carr’s full name. This cooperation, according to Bowen, shows she did not intend to help Carr. However, the only inference that can be drawn from her providing false information to the police was that she intended to “[aid Carr’s] flight to avoid detection and arrest, [and] committed the crime of accessory after the fact.” 'See Schramm v. State, 374 So.2d 1043, 1044 (Fla. 3d DCA 1979). The fact that Bowen may have subsequently cooperated with law enforcement does not diminish the impact of her earlier actions. Cf. Bowen, 791 So.2d at 53.
The last criterion requires the State to prove that Bowen was not related to Carr by blood or marriage. Bowen does not contest this fact. Since the State presented prima facie evidence permitting a jury to conclude that Bowen was an accessory after the fact as to all three crimes, we cannot say the trial court erred when it denied Bowen’s motion for judgment of acquittal.
Bowen’s second contention on appeal is that the trial court erred in admitting certain pieces of evidence and in excluding evidence that Bowen claims was relevant and important. A trial court’s ruling concerning the admissibility of evidence will not be disturbed on appeal, except when abuse of discretion can be.established. Blanco v. State, 452 So.2d 520, 523 (Fla.1984). After careful review of the record, including the transcripts of the testimony of the witnesses involved, we find that Bowen has failed to show that the trial court abused its discretion in admitting the evidence at issue. Likewise, we find that Bowen has failed to show abuse of discretion in the trial court’s decision to exclude evidence that it determined to be inadmissible. ■
We now turn to Bowen’s assertion that the trial court erred in imposing an upward departure sentence of 259 months’ imprisonment. In reviewing the trial court’s assessment on this issue, we note that:
[A] trial court’s decision to depart from the guidelines is a two-step process. First, the trial court must determine whether it can depart by determining as a mixed question of law and fact whether there is a valid legal ground supported by an adequate factual basis. If so, the second step is the discretionary decision whether departure is the best sentencing option considering the totality of the.circumstances, including mitigation and aggravating circumstances.
Himes v. State, 775 So.2d 381, 383 (Fla. 2d DCA 2000) (citations omitted).
At the senteneihg hearing, the State offered several reasons why the court should impose an upward departure sentence. After considering the argument of counsel, the trial court determined that a “valid reason does exist” to depart from the guidelines. In explaining its departure from the guidelines, the court reasoned that it was Carr’s flight “after committing two first degree murders and escaping” that exposed many people to danger. There was an increase in the period of time when law enforcement did not know Carr’s true identity, due specifically to Bowen’s actions. The trial court went on to conclude that consequently it was Bowen’s “conduct in this offense [that] created a substantial risk of death or great bodily harm to many persons or to one or more small children,” which constituted “an aggravated circumstance” meriting a departure from the sentencing guidelines.
*546 In light of the facts developed at trial, we find that there is an adequate basis for the trial court’s decision. We also find no abuse of discretion in the trial court’s decision to impose a departure sentence given the aggravating circumstances identified by the court.
Bowen next contends that the trial court erred in imposing an increased sentence on retrial. The trial court here sentenced Bowen to 259 months, the same sentence imposed after the first trial. Although the length of both sentences is the same, arguably Bowen has received an increased sentence since she was convicted of fewer charges in her second trial. Nevertheless, we note that two different judges presided over Bowen’s two trials and thus two different judges sentenced her. When a second sentence, albeit harsher, is imposed by a different judge “a sentence ‘increase’ cannot truly be said to have taken place.” Texas v. McCullough, 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). Furthermore, because the “record provides logical and non-vindictive reasons for the sentence,” Van Loan v. State, 779 So.2d 497, 500 (Fla. 2d DCA 2000), we find no error in the sentence the trial court imposed.
Accordingly, we affirm Bowen’s conviction and sentence.
WHATLEY and STRINGER, JJ„ Concur.

. We also reversed Bowen’s convictions for accessory after the fact to the murder of Trooper James Crooks and in the manslaughter of Bowen's son, Joey Bennett. This court determined that Bowen was entitled to a judgment of acquittal on these charges.