OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Kelli Garrett, filed March 26, 2007. On December 1, 1997, a Clark County Grand Jury indicted Garrett on five counts of aggravated robbery, in violation of R.C. 2911.01, with firearm specifications, and 10 counts of kidnaping, in violation of R.C. 2905.01, with firearm specifications. On March 25, *Page 2 
1998, a Clark County jury found Garrett guilty of all charges. On April 22, 1998, Judge Gerald F. Lorig sentenced Garrett to nine years on each count of aggravated robbery, eight years on each count of kidnaping, and three years on the firearm specification(s). The firearm specification sentence was ordered to be served consecutively and prior to all other terms, and four of the nine year terms for aggravated robbery were ordered to be served consecutive to each other, with all other terms to be served concurrently, for a total term of 39 years.
 {¶ 2} Garrett appealed, and we affirmed Garrett's conviction and sentence on December 10, 2004. Garrett appealed to the Supreme Court of Ohio, and on May 3, 2006, the Supreme Court reversed our Decision and remanded the matter to the trial court for resentencing, pursuant toState v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856.
 {¶ 3} On November 20, 2006, Garrett was re-sentenced by Judge Douglas M. Rastatter. The re-sentencing court ordered Garrett to serve a three year term for the firearm specification prior to and consecutive with the other terms imposed. On the aggravated robbery counts, the court sentenced Garrett to 10 years on each count, to be served consecutively, and on the kidnaping counts, the court imposed an eight year term on each count, to be served concurrently with each other and with the terms imposed for aggravated robbery, for a total prison term of 53 years.
 {¶ 4} On December 8, 2006, Garrett filed a Notice of Appeal, which we dismissed for lack of a final appealable order, because the re-sentencing court had yet to file a final judgment entry of conviction and sentence. On February 27, 2007, the re-sentencing court filed a judgment entry of conviction and sentence, and Garrett filed the Notice of Appeal now before us. *Page 3 
 {¶ 5} The events giving rise to this matter began on October 14, 1997, when Garrett and her brother, Carlos, entered Max's Jewelers and Loan in Springfield, pretending to be customers. Carlos suddenly pulled out a gun and announced, "This is a holdup." He and Garrett ordered three employees into a back room and bound them with duct tape. Garrett took their wallets. Either Garrett or Carlos found a gun behind a counter, and then both of them were armed. Garrett pointed her gun at the store owner at close range, instructing him to open the safe. Garrett removed the items therein, and she and Carlos removed other property from the store display cases. The two stole approximately $250,000.00 worth of property.
 {¶ 6} In the course of the robbery, several customers entered the store. Garrett ordered one of them behind the counter. A couple with two children entered the store, and they were forced into the back room. When the five-year-old girl began to cry, Garrett put a gun to her head and threatened to kill her. Four other customers who entered the store were forced into the back room, and Garrett asked Carlos to kill everyone so that there would be no eyewitnesses.
 {¶ 7} At Garrett's re-sentencing, her counsel argued that Garrett now takes full responsibility for her actions. Counsel noted that Garrett was nineteen when she committed the offenses, and that over the past nine years in prison she has completed several programs, including a course in cosmetology, a behavior modification program, a preparatory course for the G.E.D., a 12-step program, a victim awareness class, and courses entitled Women Like Me and Reflections of Women. Garrett is a member of Toast Masters International, and she has given a presentation in prison on domestic violence. Counsel also informed the court that Garrett has been diagnosed with Cushing's Syndrome, and she has a reflux condition. *Page 4 
 {¶ 8} Several witnesses testified on Garrett's behalf as follows: Garrett's parents, Ida and Aaron Garrett; Renee Chutes, who has a chemical dependency license and has worked with Garrett; Pastor Jones, and family friends Barb and Frank Fogel, and Charles Steinbell. Garrett herself testified that she takes full responsibility for her actions, she expressed remorse, and she described the numerous programs she has completed.
 {¶ 9} One of Garrett's victims, the owner of Max's Jewelers and Loan, gave a statement regarding the ongoing psychological and economic harm he has suffered due to Garrett's actions. The State then called the court's attention to the serious nature of the offenses Garrett committed and their continuing impact on the victims. The State urged "that retaining the present sentence would be the appropriate disposition of this case."
 {¶ 10} In re-sentencing Garrett, the court noted the supportive testimony of Garrett's witnesses, and commended Garrett for completing her programs. The court then discussed the specific facts of Garrett's offenses. The following colloquy occurred after sentence was imposed:
 {¶ 11} "Mr. Marshall: So that comes out to more than what she got previously.
 {¶ 12} "The Court: Right.
 {¶ 13} "* * *
 {¶ 14} "Mr. Marshall: So I wanted to just put on the record an objection to that. It's a violation of Miss Garrett's federal and state due process rights; and on that I rely on North Carolina versus[Pearce], which is a United States Supreme Court decision, 1969. * * * Also relying on Texas v. McCullough, which is also a United States Supreme Court decision from 1986, * * *." *Page 5 
 {¶ 15} "The Court: Okay. I would just point out that the opinion inState v. Foster, Justice Lanzinger even states that when these cases come back on Foster remands, that there's nothing stopping the defendant from getting more time than they got before so the Court's relying on that language."
 {¶ 16} Garrett asserts three assignments of error, the first of which is as follows:
 {¶ 17} "KELLI GARRETT WAS DEPRIVED OF HER RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN THE RESENTENCING COURT IMPOSED A HARSHER SENTENCE UPON REMAND."
 {¶ 18} According to Garrett, "Any increase in a sentence above the original sentence is presumptively vindictive and requires an affirmative explanation by the re-sentencing judge based on specific conduct or events that have taken place since the original sentence," in reliance upon North Carolina v. Pearce (1969), 395 U.S. 711, 725-726,89 S.Ct. 2072, 23 L.Ed.2d 656. (emphasis added). According to Garrett, "without the Pearce presumption, defendants will not want to appealFoster-based sentencing issues because of the possibility of receiving harsher sentences on remand. And this `chilling' of a defendant's right to appeal is exactly what North Carolina v. Pearce intended to prevent." Further, Garrett argues, if "the presumption of vindictiveness is determined not to apply, a defendant may nevertheless seek to demonstrate, from the record, that the harsher sentence is the product of actual judicial vindictiveness," in reliance upon Wasman v.United States (1984), 468 U.S. 559, 569, 104 S.Ct. 3217, 82 L.Ed.2d 424.
 {¶ 19} The State argues that due process does not prohibit enhanced sentences, that *Page 6 Pearce has been clarified and the presumption of vindictiveness does not apply, and "[w]ithout the presumption of vindictiveness or a showing of actual vindictiveness, the resentencing judge is not required to state its reasons for imposing a harsher sentence upon remand," in reliance upon State v. Goodell, Lucas App. No. L-07-1016, 2007-Ohio-5318.
 {¶ 20} In Pearce, the Supreme Court determined, "Due process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."Pearce, at 725. The Supreme Court determined that the defendant's rights to due process were violated and set aside a subsequent harsher sentence, where "neither at the time the increased sentence was imposed upon Pearce, nor at any stage in this habeas corpus proceeding, has the state offered any reason or justification for that sentence beyond the naked power to impose it." Id., at 726. The Pearce court held, "in order to assure the absence of [vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id., at 726. "Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new *Page 7 
presentence investigation, from the defendant's prison record, or possibly other sources," and it should throw "new light upon the defendant's `life, health, habits, conduct, and mental and moral propensities.'" Id., at 723.
 {¶ 21} In Wasman, the Supreme Court clarified its holding inPearce as follows: "If it was not clear from the Court's holding inPearce, it is clear from our subsequent cases applying Pearce that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights. In Pearce * * * the Court `presumed' that the increased sentence and charge were the products of actual vindictiveness aroused by the defendant's appeals. It held that the defendant's right to due process was violated not because the sentence and charge were enhanced, but because there was no evidence introduced to rebut the presumption that actual vindictiveness was behind the increases; in other words, by operation of law, the increases were deemed motivated by vindictiveness." Wasman, at 568-69. In the absence of the Pearce presumption, the defendant may still obtain relief if he can prove actual vindictiveness. Id., at 569. In Wasman, the defendant was twice sentenced by the same judge, and the second sentence was more severe. The judge stated that he imposed the harsher sentence because between the first and second trials the defendant had been convicted of another felony in a separate proceeding, and the court determined that the judge's explanation rebutted the presumption of vindictiveness.
 {¶ 22} The Supreme Court further clarified the Pearce doctrine inAlabama v. Smith (1989), 490 U.S. 794, 799, 109 S.Ct. 2201,104 L.Ed.2d 865, reiterating that the Pearce rule was too broad and limiting its application "to circumstances `where its objectives are thought *Page 8 
most efficaciously served.'" (quoting Texas v. McCullough (1986),475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104.) "Such circumstances are those in which there is a `reasonable likelihood' [internal citation omitted] that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." Id. (Internal citation omitted).
 {¶ 23} In McCullough, the defendant was initially sentenced by a jury to twenty years for murder. His motion for a new trial was granted due to prosecutorial misconduct, and following retrial, the trial judge imposed a term of 50 years, in reliance upon new evidence about the murder that was not presented at the initial trial, indicating that the defendant, and not his accomplices, slashed the throat of the victim, and that the defendant had been released from prison just four months before committing the offense at issue. In finding no due process violation, the Supreme Court noted, "`[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty.' (Internal citation omitted). Here, the second sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence. We read Pearce to require no more particularly since trial judges must be accorded broad discretion in sentencing." McCullough, at 140.
 {¶ 24} In reliance upon McCullough, we have determined thatPearce's presumption of judicial vindictiveness does not apply where the judge at re-sentencing, who imposed a harsher sentence, was different from the judge at the initial sentencing. State v. Johnson, Montgomery App. No. 18937, 2002-Ohio-4339 (affirming subsequent sentence where "the trial judge who *Page 9 
has imposed the harsher sentence has provided a satisfactory explanation, on the record, of his reason for imposing the harsher sentence," namely defendant's "continuing lack of remorse, his failure to seek assistance for his problem with drug and alcohol dependence, and the continuing and extensive psychological injury to the victims").
 {¶ 25} Subsequent to the filing of Garrett's brief, we decidedState v. Howard, Clark App. No. 07CA0003, 2007-Ohio-4334. InHoward, the appellant was originally sentenced to twenty-five years for aggravated robbery with a firearm specification, attempted murder with a firearm specification, and having weapons while under a disability. His conviction and sentence were affirmed on appeal, and Howard appealed to the Ohio Supreme Court. The matter was reversed and remanded for resentencing pursuant to State v. Foster. As here, the re-sentencing judge was different than the original one. Without explanation, he increased Howard's previous sentence by one year on each of the three felony offenses, to ten years for attempted murder, ten years for aggravated robbery and five years for having weapons under disability, and ordered them to run consecutively. The court also merged the firearm specifications and imposed an additional and consecutive three-year term, for a total sentence of 28 years.
 {¶ 26} In affirming the judgment of the trial court, we determined that the presumption of vindictiveness did not apply, since different sentencers were involved, and "the judge who imposed the second sentence was not required to explain his reason for the harsher sentence in order to rebut the presumption of vindictiveness that could have applied had the same sentencer acted in both instances." We determined, "`[a]ctual vindictiveness' implies an animus against a defendant on account of the Defendant's prosecution of his right of appeal, resulting in a reversal of the defendant's prior conviction for error in a ruling made by the sentencing judge. *Page 10 
The rule of Pearce is thus concerned with the sentencer's personal motivation." Id., at ¶ 17.
 {¶ 27} While we further reviewed the record in Johnson and determined that actual vindictiveness was not shown, noting the trial court's logical explanation for the harsher penalty therein, the majority inHoward did not do so, noting that "Pearce and its progeny are concerned not with the particular differences in the two sentences but the setting in which the second, harsher sentence is imposed." The increase in sentence in Howard, however, from 25 to 28 years, was insignificant in comparison to the unexplained and harsh 14 year increase in Garrett's sentence.
 {¶ 28} Addressing the matter before us, we are aware that "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case." Pearce, at 725, fn. 20. We note that the possibility of vindictiveness certainly does not inhere toa Foster remand to a different judge who committed no error resulting in the remand. The State, in fact, suggests that Garrett "does not argue any actual vindictiveness."
 {¶ 29} Our holding in Howard does not prevent us from examining the record before us for actual vindictiveness when a sentence inexplicably has been increased by 14 years. Our review of the record herein leads us to conclude that vindictiveness is established. From the record before us, it is evident that Garrett's sentence is 14 years greater than her initial sentence for no other reason than a change in the identity of the judge who sentenced her. First, there is a complete absence in the record of any relevant facts subsequent to Garrett's first sentencing, as in Johnson, to suggest a harsher sentence was warranted. While the judge referenced the facts of Garrett's offenses and their serious nature, those facts have not changed since Garrett was originally sentenced. We note, Garrett demonstrated remorse and availed herself of several *Page 11 
prison programs directed to her recovery and personal growth, and the State did not recommend any increase in sentence. Second, the length of the increase is not merely a few years, as in Howard, but a substantial 14 years. Third, the trial judge's comment, " * * * there's nothing stopping the defendant from getting more time than they got before so the Court's relying on that language," indicates that the increased sentence is imposed merely because the judge concludes he has the unbridled discretion to impose it. With nothing before us beyond an assertion by the trial judge of a "naked power to impose" a harsher sentence, we must infer a personal animus against Garrett. Additionally, while the judge remarked that nothing in Foster prohibited enhanced sentencing on remand, that is a misstatement of the language inFoster, which provides, "While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties." While Foster allows the court broad discretion, it does not eliminate appellate review of arguably vindictive sentences that serve to chill appellate rights.
 {¶ 30} Finally, we note that Goodell, relied upon by the State, is distinguishable from the matter herein. In 2002, Goodell was convicted of rape, two counts of aggravated burglary and two counts of felonious assault, and he was sentenced to five years for rape and four years each for the aggravated burglary and felonious assault convictions. The court ordered the burglary and assault sentences to be served concurrently but consecutive to the rape sentence, for a total sentence of nine years. The matter was later remanded following appeal on the issue of restitution, costs and fees only.
 {¶ 31} In 2004, Goodell's direct appeal was reopened, limited to the issue of whether the trial court complied with the statutory requirements for the imposition of consecutive *Page 12 
sentences. The matter was remanded for resentencing because the trial court did not make the mandatory findings required by statute. On remand, a different judge increased Goodell's sentence for rape to seven years and increased the two sentences for aggravated burglary to five years each. The sentences for felonious assault remained the same. The court ordered the two four-year sentences to be served concurrently to each other, and the two five-year sentences to be served concurrently. The five and four year terms were ordered to be served consecutively to each other and consecutively to the rape sentence, for a total sentence of 16 years.
 {¶ 32} In June, 2006, following appeal, the matter was again remanded for re-sentencing because the re-sentencing court acted outside of the scope of its authority on remand, and the trial court was instructed to re-sentence Goodell to the original terms of incarceration for each offense. The trial court was further instructed to comply with State v.Foster. At the hearing, the sixteen year sentence was reduced to 13 years by reducing the previous sentences to their original terms but modifying their consecutive natures.
 {¶ 33} On the subsequent appeal, the trial court determined that the presumption of vindictiveness did not apply and that the trial court "was not required to state its reasons for imposing a harsher sentence." The court further determined that Goodell did not demonstrate actual vindictiveness because the trial court "was simply complying with this court's decision. In compliance with this court's decision, the trial court re-imposed the original sentences for each individual offense. The court then reconsidered the consecutive nature of the sentences as imposed in 2005, pursuant to Foster and shortened the aggregate sentence by three years." We did not instruct the re-sentencing court herein to sentence Garrett to specific terms for each of her offenses, and we accordingly cannot determine that vindictiveness is not established because *Page 13 
the judge complied with a specific mandate.
 {¶ 34} Since actual vindictiveness has been established, Garrett's first assignment of error is sustained, and the judgement of the re-sentencing court is reversed and Garrett's sentence is modified to an aggregate term of 39 years pursuant to the authority set forth in Section 3(B)(2), Article IV of the Ohio Constitution and R.C.2953.08(G)(2).
 {¶ 35} Garrett's second assignment of error is as follows:
 {¶ 36} "THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES IN VIOLATION OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF THE UNITED STATES CONSTITUTION; FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; BLAKELY v. WASHINGTON (2004), 542 U.S. 296;UNITED STATES V. BOOKER (2005), 543 U.S. 220."
 {¶ 37} "Foster established a bright-line rule that anypre-Foster sentence to which the statutorily required findings of fact applied (i.e. more-than-minimum, maximum, and consecutive sentences), pending on direct review at the time that Foster was decided, must be reversed, and the cause remanded for re-sentencing in accordance withFoster, if the sentence is a subject of the appeal." State v.Logsdon, Clark App. No. 2005-CA-66, 2006-Ohio-6833.
 {¶ 38} As we have previously noted, "the appellate jurisdiction of this court permits us to review `judgements or final orders of courts of record inferior to the court of appeals within the district' as well as `orders or actions of administrative officers or agencies.' Section3(B)(2), Article IV, Ohio Constitution. Manifestly, decisions of the Supreme Court of Ohio are outside these classifications. Therefore, we lack the jurisdiction to review those decisions for error." State v.Burkhart, Champaign App. No. 06CA18, 2007-Ohio-3436. *Page 14 
 {¶ 39} Garrett's third assignment of error is as follows:
 {¶ 40} "THE TRIAL COURT DID NOT HAVE THE AUTHORITY TO IMPOSE CONSECUTIVE SENTENCES."
 {¶ 41} According to Garrett, "Ohio Revised Code Section 2929.14(E)(4) authorized a trial court to impose consecutive sentences when certain findings were made. * * * And R.C. 2929.41 set forth the presumption that prison terms be served concurrently." Garrett argues that, since the Ohio Supreme Court in Foster severed R.C. 2929.14(E)(4) and R.C.2929.41, the trial court did not have the authority to impose consecutive sentences.
 {¶ 42} As we have previously determined, this "argument is in direct contradiction to the clear mandate of the Supreme Court. Rather than the trial court being required to impose a minimum sentence, the court had `full discretion to impose a prison sentence within the statutory range' without being required to make any findings or give any reasons for imposing more than minimum sentences or for ordering consecutive sentences." State v. Kendrick, Montgomery App. No. 21790, 2007-Ohio-6136
(quoting Foster, at ¶ 7 of the syllabus). Garrett's third assignment of error is overruled.
 {¶ 43} Appellant's first assignment of error having been sustained, the sentence is modified to an aggregate term of 39 years consistent with Garrett's initial sentence.
 BROGAN, J. and FAIN, J., concur. *Page 1