550 So.2d 837 (1989)
STATE of Louisiana, Appellee,
v.
Felix RODRIGUEZ, Jr., Appellant.
No. 20903-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Felix Rodriguez, Jr., in pro. per.
J. Spencer Hays, Indigent Defender Bd., Benton, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., Benton, for appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Felix Rodriguez, Jr., was originally charged with armed robbery, in violation of LSA-R.S. 14:64. Pursuant to a plea bargain, he pled guilty to first degree robbery, a violation of LSA-R.S. 14:64.1. The trial court sentenced him to twelve years at hard labor, without benefit of parole, probation or suspension of sentence. This sentence was affirmed on appeal. Subsequently, the defendant filed an application for post conviction relief, alleging breach of the plea bargain, which application was granted by the Louisiana Supreme Court. As ordered by the Supreme Court, the defendant was resentenced by a different district court judge, who imposed a sentence of twenty years at hard labor. The defendant appeals from this sentence as being excessive, as well as being in excess of the original sentence. For the following reasons, we affirm.

*838 FACTS
On February 20, 1985, the defendant robbed a Bossier City, Louisiana, motel clerk at gunpoint. The clerk recognized the defendant as the boyfriend of a coworker. After obtaining almost $300 from the clerk, the defendant disconnected the telephones, took the clerk's keys, and locked her in the building. After the defendant left, the clerk freed herself with an extra set of keys and contacted the police. The defendant, whose fingerprints were found on the telephone, was subsequently arrested and extradited from Texas.
A bill of information, filed on July 29, 1985, charged the defendant with armed robbery. On October 25, 1985, the defendant pled guilty to first degree robbery pursuant to a plea bargain. A presentence investigative (PSI) report was ordered by the trial court.
On January 28, 1986, the defendant was sentenced to serve a term of imprisonment of twelve years at hard labor without benefit of parole, probation or suspension of sentence. At the sentencing, the trial court observed that according to the PSI report the defendant had admitted giving the probation officer false information to prevent discovery of his "lengthy" juvenile criminal record in New Jersey. Furthermore, the trial court stated that the defendant's actions had, in fact, frustrated efforts to learn the details of his juvenile record. In imposing sentence, the trial court referred to the defendant's lack of an adult criminal record. The trial court also mentioned the district attorney's recommendation that the defendant receive a lengthy term of imprisonment.[1]
The defendant appealed his sentence as being excessive. This court affirmed the sentence of the trial court. See State v. Rodriguez, 499 So.2d 166 (La.App. 2d Cir. 1986).
Thereafter, the defendant filed an application for post conviction relief, asserting that the district attorney's office had breached a condition of the plea bargain by which it agreed not to make a sentence recommendation to the trial court.
On August 4, 1987, a hearing was held on defendant's application. The trial court denied relief. The defendant sought review by this court, which denied the writ application on February 11, 1988. However, on November 18, 1988, the Louisiana Supreme Court granted writs and vacated the defendant's sentence. 533 So.2d 340. The Supreme Court ordered that the case be remanded to the district court for resentencing in conformity with the plea bargain. The Supreme Court also ordered that resentencing be conducted before a different judge.
On January 3, 1989, the defendant was resentenced by a different district court judge who was unaware of the previously imposed sentence. The trial court reviewed a current, revised PSI report, which, unlike the initial report, contained a list of the defendant's convictions as shown on his FBI rap sheet. The defendant's record demonstrated that he had an extensive adult criminal record in New Jersey. Taking this into consideration, the trial court sentenced the defendant to serve a term of imprisonment of twenty years at hard labor.
The defendant now appeals from this sentence. He argues that the trial court erred in imposing a sentence that was: (1) in excess of the original sentence; and (2) unduly excessive in length.

INCREASE IN SENTENCE AFTER REMAND
The defendant argues that the trial court impermissibly imposed an increased sentence upon him on remand, in contravention of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). He further alleged a violation of his rights under the double jeopardy constitutional *839 provision and a judicial "vendetta" against him.
In North Carolina v. Pearce, supra, the Supreme Court held that neither the double jeopardy provision nor the Equal Protection Clause imposed an absolute bar to a more severe sentence upon reconviction. However, the court found that the due process clause of the Fourteenth Amendment prevented increased sentences when the increase was motivated by a vindictiveness on the part of the sentencing judge. "And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."
The court further stated that:
In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
Pearce, 89 S.Ct. at 2081.
The Supreme Court has clarified its holding in Pearce in several subsequent cases. According to these cases, Pearce established a prophylactic rule by which a presumption of vindictiveness is deemed to exist when a judge imposes a more severe sentence upon a defendant who successfully exercised his right to appeal or to attack his conviction collaterally. This presumption of vindictiveness may be overcome only by objective information in the record justifying the increased sentence.
The cases clearly establish that actual vindictiveness of a sentencing judge was "the evil the Court sought to prevent rather than simply enlarged sentences after a new trial." Texas v. McCullough, 475 U.S. 134, 106 S.Ct. 976, 978, 89 L.Ed.2d 104 (1986); Wasman v. United States, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). In Chaffin, 93 S.Ct. at 1982, the court stated:
That decision, as we have said, was premised on the apparent need to guard against vindictiveness in the resentencing process. Pearce was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with a need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process. [Citation omitted.] [Emphasis theirs.]
However, the presumption of vindictiveness is inapplicable where, as here, different sentencers have imposed the different sentences against the defendant, because a sentence "increase" cannot truly be said to have taken place.[2]McCullough, 106 S.Ct. at 979.
Where the presumption does not apply, the defendant may still be entitled to relief, but he must affirmatively prove actual vindictiveness. Wasman, 104 S.Ct. at 3223.
In the present case, the trial judge who resentenced the defendant stated on the record that he had deliberately avoided *840 learning the length of the sentence originally imposed upon the defendant. The second sentencing judge reviewed the defendant's revised PSI on the record and discussed its contents in great detail. He further stated that the sentence he was imposing upon the defendant was based upon the PSI, which recounted the defendant's lengthy adult criminal record. The trial court observed that the defendant's record was such that the defendant was a candidate for receiving the maximum penalty for the crime. The court also noted that the defendant could have been billed as a multiple offender.
Even assuming, arguendo, that the Pearce presumption applied in the present case, we find that the trial court's reasons for imposing sentence are sufficient to overcome any presumption of vindictiveness.
In Pearce, 89 S.Ct. at 2079, the court stated:
A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or lesser than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." Williams v. New York, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in Williams v. New York, supra, that a state may adopt the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." Id. 337 U.S. at 247, 69 S.Ct. at 1083.
In McCullough, the court explained that the above quoted Pearce language referring to "subsequent" conduct was never intended to describe exhaustively all of the possible circumstances in which an increased sentence would be justified. The court acknowledged that a restriction to "only `events that occurred subsequent to the original sentencing proceedings' could in some circumstances lead to absurd results." The court then recited a hypothetical example suggested by the Solicitor General in his amicus curiae brief. In this example, an apparent first felony offender (who received a light sentence) successfully appealed a conviction for a nonviolent burglary. Following his successful appeal and conviction on retrial, the authorities learned that the defendant had been using an alias and had a long history of criminal offenses, including convictions for armed robbery and for a murder committed in the course of a burglary. The court agreed that it would be a bizarre result if such a defendant could not receive a greater sentence in light of the information subsequently learned.
The court went on to say that,
Nothing in the Constitution requires a judge to ignore "objective information... justifying the increased sentence." In refusing to apply Pearce retroactively we observed that "the Pearce prophylactic rules assist in guaranteeing the propriety of the sentencing phase of the criminal process." [citation omitted] Realistically, if anything this focus would require rather than forbid the consideration of the relevant evidence bearing on sentence since `[h]ighly relevantif not essentialto [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' [Citations omitted.]
McCullough, 106 S.Ct. at 981.
The situation presented in the instant case is remarkably similar to the hypothetical situation discussed by the court in McCullough to illustrate the potential absurdity of an unduly restrictive interpretation of the language in Pearce. Here the defendant admitted to deliberate efforts to prevent the probation officer from learning of his extensive prior criminal record. *841 While the defendant's full record was not contained in the initial PSI, it was contained in the second PSI which was utilized in resentencing. The defendant's FBI rap sheet included a significant history of criminal activity which was not available to the first sentencing judge. We note that at the resentencing, the defendant made no effort to dispute any of the crimes recited by the second sentencing judge.
Like the court in McCullough, we believe it would be "wholly incompatible with modern sentencing standards" to prohibit the trial court from relying on pertinent new information developed in the second PSI report. Therefore, based on the foregoing discussion, we find that the mere fact that the defendant was resentenced to a greater term of imprisonment does not, standing alone, mandate that the defendant's new sentence be reversed.
We find State v. Wise, 425 So.2d 727 (La.1983) and State v. Merrell, 511 So.2d 1234 (La.App. 2d Cir.1987), inapplicable to the present case. In both cases, the resentencing court had no new, objective information upon which to base an increased sentence. Also, the clarifications of Pearce, found in McCullough, supra, were not discussed.
This assignment of error has no merit.

EXCESSIVE SENTENCE
The defendant also contends the trial court's sentence of twenty years at hard labor was excessive. This court previously held that a sentence of twelve years at hard labor, without benefit of parole, probation or suspension of sentence was not excessive for the offense for which the defendant was convicted. The issue now is whether the additional factor of the defendant's adult criminal record justified the longer sentence imposed by the second sentencing judge.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983)
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may *842 properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La. 1984). As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Williams, 454 So.2d 1287 (La.App. 2d Cir.1984). However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the benefit received by a plea bargain agreement and the attendant reduction in potential exposure to criminal penalty is a proper sentencing consideration particularly where the offense involves violence. State v. Griffin, 455 So.2d 681 (La.App. 2d Cir. 1984), writ denied 458 So.2d 128 (La.1984); State v. Richardson, 446 So.2d 820 (La. App. 2d Cir.1984); State v. Winzer, 465 So.2d 817 (La.App. 2d Cir.1985).
Originally, the defendant, who is now thirty years of age, was thought to have a lengthy juvenile record, but no adult criminal record. However, as previously noted, a second PSI revealed that the defendant, in fact, had an extensive adult record, most of which occurred in the state of New Jersey. The defendant's first adult conviction followed his 1978 arrest for possession and use of a controlled dangerous substance; he pled guilty to misdemeanor possession of marijuana. He was sentenced to one year of probation, which he completed satisfactorily. Later that same year, he was charged with possession of marijuana and possession of a hypodermic needle. He was sentenced to time already served.
In March, 1979, the defendant was arrested for carrying a concealed weapon. He was sentenced to thirty days in jail, all but one day of which was suspended, probation for one year, and a fine of $250. (This probation was subsequently revoked when a gun and bullets were discovered in his possession.) In June of 1979, Florida authorities arrested the defendant for misdemeanor fraud, and he was sentenced to serve ten days or pay a fine of $122.
In 1980, the defendant was arrested by New Jersey authorities on four different occasions. In February, he was arrested for selling firearms without a license after he sold two shotguns and a handgun to an undercover agent. He pled guilty to third and fourth degree felonies in this instance, and was sentenced to eleven months in jail, all but thirty days of which were suspended, plus two years of probation and a fine of $250. (The defendant was later ordered to serve six days in jail to complete his sentence due to his failure to report to jail on weekends.)
The defendant was also arrested in November, 1980, for felony burglary, theft, resisting an officer and possession of marijuana. The next month he was arrested on two occasionsthe first for theft and burglary, the second for theft. These three arrests were consolidated into one case. The defendant pled guilty to felony burglary and theft. He was given a suspended sentence and two years supervised probation, plus a six month jail term in the work release program. All other charges were dismissed.
In April, 1981, the defendant was charged with larceny of an automobile and receiving stolen property. He pled guilty to misdemeanor car theft and was fined.
In 1981, the defendant was extradited from Pennsylvania to New Jersey for a probation violation and failure to appear. (In July, 1981, the defendant also pled guilty to a probation violation and was sentenced to four months in jail with credit for time served.) Furthermore, in 1981 the defendant was also arrested for fraudulent demand against the United States government in connection with the forgery of a Social Security check. He pled guilty to a misdemeanor charge and received a suspended sentence of one year and federal probation for three years. (In 1984, this probation was revoked because of new convictions.)
In 1983, the defendant was arrested for obstruction of a police officer, assault on a police officer, assault on a civilian, burglary, and damage to property. He pled guilty to the offenses of damage to property *843 and assault on a police officer. He was sentenced, respectively, to a fine of $50 and to a term of six months in jail. In 1984, he was arrested in Missouri for felony burglary and misdemeanor theft. However, the disposition of these charges is unclear.
The PSI also indicated that the defendant was convicted of probation violations in June of 1982 and in December of 1982. Apparently, these violations concern the probation for the 1980 firearms convictions.
We find that the trial court correctly considered the defendant's past criminal record as a significant factor in imposing sentence. The defendant apparently has strong criminal propensities which have not been curbed by his repeated encounters with the law. On many occasions, the defendant has received leniency in the form of probated sentences, the conditions for which he has consistently violated.
The trial court did not err in the imposition of the twenty year sentence. The defendant committed a serious crime, armed robbery, which carried a potential maximum sentence of ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. Despite the defendant's protestations to the contrary, the record demonstrates that the defendant was actually armed when he robbed the motel clerk. The presence of the gun threatened the clerk with great physical and emotional harm. In fact, she subsequently suffered a miscarriage after the robbery.
The defendant was allowed to plead guilty to the lesser offense of first degree robbery, which carried a penalty range of between three years and forty years at hard labor, without benefit of parole, probation or suspension of sentence.[3]
In view of the circumstances of the crime, the benefit received in the plea bargain, and the defendant's past criminal record, we find that the defendant's sentence of twenty years at hard labor was not excessive. Therefore, this assignment of error is without merit.

CONCLUSION
Based on the foregoing, the defendant's sentence is affirmed.
AFFIRMED.
NOTES
[1] The PSI contained the following statement:

According to the Bossier Parish District Attorney's Office, there was a plea bargain in reference to reducing the charge of Armed Robbery to First Degree Robbery. Bobby Stromile, Assistant District Attorney for Bossier Parish, indicated that Felix Rodriguez should serve a long jail sentence but would leave the sentence up to the sentencing judge.
[2] In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the court found that the possibility of vindictiveness found in Pearce was not inherent in the Kentucky two-tier system in which a defendant was entitled to trial in an inferior court and a trial de novo in a court of general jurisdiction. In Chaffin, supra, the defendant was sentenced by two different juries, the second of which was unaware of the sentence imposed by the first jury. In McCullough, the defendant was initially sentenced by a jury, but was resentenced after a new trial by the same judge who had presided over the original jury. In these cases, the presumption was deemed inapplicable because there were different sentencers.
[3] Although the second sentencing judge signed a judgment which recited that the defendant's sentence was to be served "without benefit of parole, probation or suspension of sentence," he failed to impose that condition on resentencing in open court, as reflected by the transcript. As a discrepancy between the transcript and a minute entry is resolved in favor of the accuracy of the transcript, we likewise find the transcript here controls over the signed judgment. Cf. State v. Herbert, 508 So.2d 973 (La.App. 4th Cir.1987); State v. Pleasant, 541 So.2d 401 (La. App. 4th Cir.1989).

Due to the trial court's failure to impose the sentence without benefit of parole, probation or suspension of sentence, the sentence may be "unlawfully lenient." However, since this error patent is favorable to the defendant and was not raised by the state on appeal, we will not disturb the sentence imposed. State v. Petta, 496 So.2d 390 (La.App. 4th Cir.1986), writ denied, 533 So.2d 10 (La.1988); State v. Herbert, supra.