374 So.2d 1043 (1979)
Leonard Francis SCHRAMM, Appellant,
v.
The STATE of Florida, Appellee.
No. 78-1774.
District Court of Appeal of Florida, Third District.
August 7, 1979.
Rehearing Denied September 17, 1979.
Kogen & Kogan and Geoffrey C. Fleck, Miami, for appellant.
Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., and BARKDULL and KEHOE, JJ.
PER CURIAM.
Leonard Francis Schramm seeks reversal of his conviction for (1) an accessory after the fact, and (2) perjury on the ground of insufficiency of the evidence.
During the early morning hours of July 11, 1977, Jimmy Lee Calvert strangled Jeffrey Paul to death in a house which he rented from Schramm. Calvert moved Paul's body outside, positioned the victim's car to make it appear that the body had been thrown on the premises and then notified the neighbors who summoned the police. After an initial investigation of the premises, the police requested that Calvert *1044 appear for a lie detector test scheduled for the following morning. Because of his friendship with Schramm, Calvert told Schramm that he (Calvert) was involved up to his neck and was not going to appear the next morning for the polygraph examination. Calvert requested money and Schramm gave him $60. Late that same evening (July 11) Schramm and two other friends of Calvert helped Calvert leave the house undetected and Schramm drove Calvert to the airport. Calvert flew to Atlanta arriving between 3:00 and 4:00 A.M. (on July 12), thereby missing his 9:00 A.M. appointment for the polygraph examination. Calvert was arrested in Atlanta the following day for the murder of Paul after Schramm reported his whereabouts to the police. In the meantime, on the afternoon of July 12 Schramm submitted to questioning by the police relative to the investigation of the Paul murder. Schramm was placed under oath and stated that he had last seen Calvert at approximately 1:00 A.M. (July 12) and Calvert had indicated that he would appear for the scheduled polygraph examination.
The above facts resulted in the prosecution and conviction of Schramm for the crimes of accessory after the fact and perjury in an official proceeding.
Schramm first contends that the trial court erred in denying his motion for judgment of acquittal where the evidence was insufficient as a matter of law to establish him as an accessory after the fact.
A person is an accessory after the fact where he maintains, assists or gives an offender any aid, knowing that he committed a felony with the intent that he shall avoid or escape detection, arrest, trial, or punishment. Section 777.03, Florida Statutes (1977)[1] and Bush v. State, 359 So.2d 556 (Fla. 4th DCA 1978).
There is ample evidence that Schramm helped Calvert with his flight to Atlanta. When Schramm was later called by an investigating officer, he denied knowing where Calvert might have gone. These facts conclusively established that Schramm aided Calvert with the intent to avoid detection.
Nevertheless, Schramm argues that because Calvert was a suspect prior to his intervention, the prosecution failed to show he intended to aid Calvert avoid detection. The fallacy in this argument is that the statute refers to an offender, not a suspect, and Calvert, although a suspect, had not yet been determined by the police to be the perpetrator of the homicide. By helping Calvert flee so he would not have to take a polygraph test, Schramm obviously aided Calvert to avoid detection. The subject statute also covers the rendering of assistance to avoid arrest, jail, etc. as well as detection. Schramm knew that Calvert was the offender and, therefore, by aiding in his flight, he helped him avoid the polygraph examination, further investigation and escape arrest.
Schramm further argues under this point that his lack of criminal intent is demonstrated by his subsequent reporting of Calvert's whereabouts to the police. Schramm can find no solace in this fact in that once he aided Calvert's flight to avoid detection and arrest, he had committed the crime of accessory after the fact. See Bush v. State, 359 So.2d 556 (Fla. 4th DCA 1978), supra.
Schramm secondly contends that the trial court erred in failing to grant his motion for judgment of acquittal where the evidence was insufficient as a matter of law to sustain a conviction for perjury in an official proceeding pursuant to Section 837.02, Florida Statutes (1977).[2] We find this point well taken.
*1045 Schramm argues hereunder that there was no evidence to show that his alleged false statements were made during an "official proceeding."
Section 837.011, Florida Statutes (1977) defines an "official proceeding" as:
.....
"837.011 Definitions In this chapter, unless a different meaning plainly is required:
"(1) `Official proceeding' means a proceeding heard, or which may be or is required to be heard, before any legislative, judicial, administrative, or other governmental agency or official authorized to take evidence under oath, including any referee, master in chancery, hearing examiner, commissioner, notary, or other person taking testimony or a deposition in connection with any such proceeding."
.....
Schramm gave his false statements to the police at the police station pursuant to a homicide investigation. An interrogation which is conducted solely at the hands of the police at a police station is simply not an official proceeding within the definition of the statute. See McCoy v. State, 338 So.2d 52 (Fla. 4th DCA 1976) and Cf. State v. Leighton, 365 So.2d 397 (Fla. 4th DCA 1979). Thus, if Schramm is guilty of an offense involving false statements, it must be an offense provided for in Section 837.012[3] or 837.05,[4] Florida Statutes (1977). Since Schramm's statements were not made during an official proceeding, his conviction for violation of Section 837.02, Florida Statutes (1977) is reversed.
We also considered Schramm's remaining point on appeal and conclude that no reversible error has been made to appear.
Affirmed in part, reversed in part.
NOTES
[1] "777.03 Accessory after the fact.  Whoever, not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, maintains or assists the principal or accessory before the fact, or gives the offender any other aid, knowing that he had committed a felony or been accessory thereto before the fact, with intent that he shall avoid or escape detection, arrest, trial or punishment, shall be deemed an accessory after the fact, and shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
[2] "837.02 Perjury in official proceedings

"(1) Whoever makes a false statement, which he does not believe to be true, under oath in an official proceeding in regard to any material matter shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
[3] "837.012 Perjury when not in an official proceeding

"(1) Whoever makes a false statement, which he does not believe to be true, under oath, not in an official proceeding, in regard to any material matter shall be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
[4] "837.05 False reports to law enforcement authorities

Whoever knowingly gives false information to any law enforcement officer concerning the alleged commission of any crime is guilty of a misdemeanor of the first degree, punishable as provided in § 775.082, § 775.083, or § 775.084."