IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

OCTAVIUS WARE,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-1032

Opinion filed February 11, 2015.

An appeal from the Circuit Court for Leon County.
James C. Hankinson, Judge.

Octavius Ware, pro se, Appellant.

Pamela Jo Bondi, Attorney General, and Jennifer J. Moore, Assistant Attorney
General, Tallahassee, for Appellee.

OSTERHAUS, J.

      Octavius Ware again appeals an order denying his post-conviction request

for a new violation of probation (VOP) hearing. In Ware v. State, 111 So. 3d 257

(Fla. 1st DCA 2013), we remanded for the post-conviction court to provide

representation to Mr. Ware and to conduct an evidentiary hearing regarding the

facts and legal effects of his girlfriend's perjury conviction related to Mr. Ware's case. After conducting the hearing, the post-conviction court denied the motion finding that a new VOP hearing would not change the outcome. And we agree. After considering all of the issues raised by Mr. Ware, we affirm without further comment except for discussing his newly discovered evidence argument.

I.

In February 2009, the State charged Mr. Ware with violating his probation from a previous burglary conviction by committing a domestic battery against Joanna Nieves. At the VOP hearing, the State's evidence included a hearsay statement written by Ms. Nieves a couple hours after police responded to her plea for help, forced entry into her apartment, and found her injured and palpably relieved by their arrival. Mr. Ware was arrested at the scene and charged with violating his probation by committing domestic battery.[1] Ms. Nieves's written statement described how she had been held against her will and battered by Mr. Ware in her apartment before being able to text family members and receive help. At the VOP hearing, however, Ms. Nieves's story changed. She testified that her written statement was false and offered a new story explaining the incident and her

---

[1] Initially, the trial court found that Appellant committed two new law violations, domestic battery and possession of a firearm by a convicted felon. On appeal, this court reversed as to his possession of a firearm, such that the revocation of Mr. Ware's probation ultimately rested on the domestic battery charge alone. See Ware v. State, 54 So. 3d 1074 (Fla. 1st DCA 2011).

injuries as would exonerate Mr. Ware. The VOP court did not believe her hearing testimony. It favored instead the version of events described in her earlier statement, which was supported by other witness testimony at the VOP hearing. The VOP court concluded that Mr. Ware violated his probation by committing domestic battery and sentenced him to ten years in prison followed by five years of probation.

Shortly after the VOP hearing, the State charged Ms. Nieves with perjury under section 837.012, Florida Statutes, for making false statements "*not* in an official proceeding." This particular charge indicated that Ms. Nieves was being prosecuted for lying in her written statement, which had included the version of events that the VOP court credited in Mr. Ware's VOP case. Ms. Nieves pled nolo contendere to the charge and was convicted.

After her conviction, Mr. Ware sought a new VOP hearing citing Ms. Nieves's perjury conviction as newly discovered evidence. He argued that Ms. Nieves's conviction fatally undermined the State's VOP case and ability to use her perjured written statement as evidence against him. The post-conviction court denied his motion and he appealed. On appeal, this court reversed and remanded directing that counsel should be appointed to Mr. Ware at a new post-conviction evidentiary hearing and directing the post-conviction court to consider the facts related to Ms. Nieves's perjury prosecution and their legal effect.

At the subsequent evidentiary hearing, the parties agreed to adopt the evidence and argument from the earlier hearing, admitting the transcript as a court exhibit. In addition, the post-conviction court heard testimony regarding how Ms. Nieves was charged in the perjury case. The law enforcement officer in charge of preparing the complaint and warrant testified that the charging decision had been a mistake. He had not intended to charge Ms. Nieves with lying to the police officer at the scene, but rather for contradictory statements in a *nonofficial* proceeding.[2] The prosecutor at Mr. Ware's prior VOP hearing testified that she also intended that Ms. Nieves be charged with contradictory statements, but thought that she had been charged with a lesser misdemeanor because "whoever made the decision [tried] to . . . cut her a break because she was a victim of domestic violence. . . . [T]he end result was they felt sorry for her. And I believe that's why they filed a misdemeanor, instead of the felony that I thought she should have been charged with."[3] Neither gave any credibility to Ms. Nieves's recantation.

---

[2] Despite the officer's intention, Nieves could not have been convicted of perjury by contradictory statements as it requires that both statements be made in one or more *official* proceedings. See § 837.021(1), Fla. Stat.; see also Sevin v. State, 478 So. 2d 521, 523 (Fla. 2d DCA 1985) (holding that contradictory statements made under oath to police officer during criminal investigation was not an official proceeding); Schramm v. State, 374 So. 2d 1043, 1045 (Fla. 3d DCA 1979) (holding that an interrogation conducted solely at the hands of the police is not an official proceeding within the statutory definition).

[3] It was noted further that the attorney who filed the information charging Ms. Nieves with misdemeanor perjury had formerly supervised Ms. Nieves's legal internship with the State Attorney's Office when Ms. Nieves was a law student.

In the end, the post-conviction court denied Mr. Ware's motion for a new VOP hearing, concluding that it was unlikely that a new VOP hearing would produce a different outcome. In denying the motion, it cited the VOP court's view, notwithstanding Ms. Nieves's statement, that the evidence against Mr. Ware had been "extremely convincing." Mr. Ware then appealed once again the denial of his post-conviction motion.

## II.

With post-conviction claims of newly discovered evidence, defendants may receive a new VOP hearing on the basis of newly discovered evidence by demonstrating, first, the existence of "new" evidence unknown and unknowable at the time of the first hearing; and, second, that the evidence would "probably produce a different result." Stallworth v. State, 21 So. 3d 84, 86 (Fla. 1st DCA 2009); Douglas v. State, 43 So. 3d 196, 198–99 (Fla. 4th DCA 2010). In making this determination, the post-conviction court "must consider the effect of the newly discovered evidence, in addition to all of the admissible evidence that could be introduced at a new [proceeding]," Hildwin v. State, 141 So. 3d 1178, 1184 (Fla. 2014) (citing Swafford v. State, 125 So. 3d 760, 775–76 (Fla. 2013)), and consider that "the State need merely prove the violation by a greater weight of the evidence." See Douglas, 43 So. 3d at 198–99.

In considering the factors that must be shown for Mr. Ware to receive a new VOP hearing, we agree with the post-conviction court's conclusion that Mr. Ware did demonstrate the existence of new evidence. Both parties speculated at the VOP hearing that Ms. Nieves might be prosecuted for perjury based upon contradictions in the testimony she gave at the VOP hearing versus her written statement to police. But the fact that Ms. Nieves was prosecuted based upon *her written statement*—the same statement that the State had earlier relied upon at Mr. Ware's VOP hearing—couldn't have been known or discovered by the defendant. See Ware, 111 So. 3d at 260 n.3 ("The fact that the prosecutor may have made the decision to pursue the perjury charge after the VOP hearing does not preclude it from being newly discovered evidence that may be considered at the postconviction proceeding."). The charge even appeared to take the prosecutor from Mr. Ware's prior VOP hearing by some surprise.

The second factor involved in determining whether the newly discovered evidence merits a new VOP hearing isn't as clear cut. The post-conviction court concluded that a new VOP hearing would not change the outcome for Mr. Ware. And we agree that a close examination of the evidence from the prior VOP hearing supports the post-conviction court's conclusion. In deciding that Mr. Ware had violated his probation, the VOP court believed Ms. Nieves's written statement to be hearsay which had to be supported by additional evidence to be considered. See

6

Carter v. State, 82 So. 3d 993, 994 (Fla. 1st DCA 2011); Legree v. State, 739 So. 2d 616, 617 (Fla. 1st DCA 1999). The VOP court took her statement into account because of what it called "extremely convincing" evidence supporting her statement. This evidence included, for example, the testimony of Ms. Nieves's father and brother, both of whom received a text message from Ms. Nieves seeking help and considered her text message to be an extremely urgent plea. Her brother stated that "she wouldn't joke around like sending me a random text message early in the morning. So I figured it was pretty urgent." Ms. Nieves's own testimony confirmed that she had indeed "texted her brother, mother, father, sister, and best friend saying that I needed help." In response, her father called the Tallahassee Police Department "concerned for her health and . . . for her being alive because of the nature of the text and the fact that there was history of [abuse]."

Law enforcement responded and met Ms. Nieves's brother at the scene who told officers that there was "a firearm inside the apartment and prior domestic violence involving her boyfriend." The officers ultimately forced entry into Ms. Nieves's apartment after no one responded to their knock and call at the door of the apartment. After gaining entry, officers testified at the VOP hearing that Ms. Nieves ran from the back bedroom—where both she and Mr. Ware had been situated—and out of the apartment very frightened, crying, shaking, and relieved.

Officers stated that the apartment was in complete disarray. Ms. Nieves had several injuries to her face, neck, chest, arms and legs.

Ms. Nieves's brother who responded to the scene testified that Ms. Nieves then "cower[ed] behind me. . . . upset, frightened, [and] disturbed." He had "never seen my sister like that, she just seemed out of her element, like really shook up." Ms. Nieves told her brother that she and Mr. Ware had gotten into an argument over a woman's phone number she found in his phone. Mr. Ware "ended up getting upset and it blew up from there." Mr. Ware had her "on the floor and her arms were pinned to the floor by his knees and he holding [sic] her wrists. And that's how she got the bruises on her bicep area."

Her brother's testimony was supported by Mr. Ware's own VOP hearing testimony. Mr. Ware confirmed that there had been an argument about another woman and that he had grabbed Ms. Nieves "hard" and physically struggled with her "in a [not] very nice way." "I grabbed her by her right wrist with my left wrist and I grabbed her left . . . tricep area. . . . It was pretty much a tussle and we fell to the floor." Mr. Ware rationalized his actions by testifying that Ms. Nieves had a gun and that he had restrained her only to prevent her from hurting herself. But the VOP court didn't believe him, or the similar testimony of Ms. Nieves, remarking at sentencing, for example, that: "Mr. Ware, you're in the unfortunate situation of saying, I didn't do it; I'm innocent. . . . And the sad fact of it for you is that I heard

8

the evidence and I thought it was quite credible. And, so I don't believe you when you get up here and say it didn't happen. I don't believe Ms. Nieves." See Russell v. State, 982 So. 2d 642, 646 (Fla. 2008) (holding that VOP court weighs the statements of the victim and probationer, the type of injury, the demeanors of the victim and probationer, and the credibility of all witnesses in determining violation of probation).

Thus, now, taking account of all of the admissible evidence from Mr. Ware's prior VOP hearing that could be introduced at a new hearing, we conclude that the trial court correctly applied the law and determined that a new VOP hearing would probably not produce a different result for Mr. Ware.

III.

The post-conviction court's decision to deny post-conviction relief is AFFIRMED.

WOLF and ROWE, JJ., CONCUR.