IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

**STATE OF TENNESSEE v. ZIBERIA MARICO CARERO, ALIAS**

**Appeal from the Criminal Court for Knox County**
**No. 102134, 107001        Steven Wayne Sword, Judge**

———————————————————

**No. E2017-01095-CCA-R3-CD**

———————————————————

The Defendant, Ziberia Marico Carero, Alias, was indicted for possession of more than .5 grams of cocaine with intent to sell, possession of more than .5 grams of cocaine with intent to deliver, and a criminal gang offense enhancement pursuant to Tennessee Code Annotated section 40-35-121. A Knox County Criminal Court jury convicted him of simple possession, a Class A misdemeanor, and possession of more than .5 grams of cocaine with intent to deliver, a Class B felony. The trial court merged the conviction for simple possession into the conviction for possession of cocaine with intent to deliver. After a bifurcated hearing, the Defendant's conviction offense was enhanced to a Class A felony pursuant to the criminal gang offense enhancement statute. The trial court imposed a sentence of fifteen years as a Range I offender with 30% release eligibility for the Class A felony conviction, to be served consecutively to a twenty-three-year sentence the Defendant was already serving. The Defendant was later granted a new sentencing hearing when the criminal gang offense enhancement statute was deemed unconstitutional. In this appeal, the Defendant challenges the trial court's imposition of a fifteen year sentence as a Range II offender with 35% release eligibility for his now Class B felony conviction, as well as the court's order that it be served consecutively to the twenty-three-year sentence he was already serving. After review, we affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Douglas A. Trant (on appeal and at hearing) and Forrest L. Wallace (at trial), Knoxville, Tennessee, for the appellant, Ziberia Marico Carero, Alias.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The evidence giving rise to the Defendant's convictions is that on October 4, 2012, officers with the Knoxville Police Department were attempting to locate the Defendant and take him into custody pursuant to a warrant in another case. In order to do so, officers utilized a confidential informant to set up a drug buy from the Defendant. When the Defendant arrived at the arranged location to meet with the informant, he was arrested without incident and found to be in possession of 1.1 grams of crack cocaine and $200 cash. The Defendant claimed that he possessed the drugs solely for his personal use and to share with the confidential informant, whom he had known socially for a few years.

At the original sentencing hearing, Officer John Houck, a corrections officer with the Knox County Sheriff's Office in 2003, recalled an incident when he was escorting the Defendant back to the probationary disciplinary unit after a shower and stopped to retrieve an item from storage. The Defendant was handcuffed at the time, and another inmate was nearby. As Officer Houck entered the storage unit, the Defendant hit him in the back of the head and used the chain of his handcuffs to choke the officer. Officer Houck fell back on top of the Defendant and struggled against him, but the Defendant continued to choke him. Officer Houck tried unsuccessfully to push the distress button on his radio and begged the other inmate to help him. Officer Houck was eventually able to pull the Defendant off of him, and he ran from the room and called for help. Officer Houck sustained a bruise to the back of his head and suffered from a sore neck following the attack.

Officer Philip Jinks with the Knoxville Police Department recalled an incident in 2001 when he observed the Defendant complete what appeared to be a drug transaction. When Officer Jinks and two other officers attempted to arrest him, the Defendant struck at the officers and tried to flee. Officer Jinks grabbed the Defendant's un-tucked shirt and tried to pull him to the ground. However, the Defendant continued to run, and Officer Jinks lost his footing and fell. The Defendant continued running, essentially dragging Officer Jinks, whose hand was wrapped up in the Defendant's shirt. Officer Jinks was eventually able to slow the Defendant down so that the other officers could catch up with him. The Defendant punched and kicked at the officers and somehow managed to pull off one officer's gun belt. As that officer stopped to secure his firearm

and other equipment, the Defendant got away again and hid in a nearby building. When the officers found the Defendant, "he was resistant and assaultive at that point as well."

Deputy Jeremy Wise with the Knox County Sheriff's Office testified that he was a corrections officer in the Knox County Jail in 2002. Deputy Wise recalled an incident when he and his corporal were interviewing the Defendant, and the Defendant punched the corporal in the face.

Sergeant Mark Belliveau, a supervisor in the maximum security section of the Knox County Jail in 2003, recalled a time when he escorted the Defendant back to his cell after a visit with his attorney. When Sergeant Belliveau removed the Defendant's wrist restraints and shackles, the Defendant punched the sergeant in the side of the head, rendering him unconscious. Sergeant Belliveau fell to the floor and hit his head on the concrete. The Defendant continued to hit and kick the unconscious sergeant, who suffered a concussion and required eight stitches on his ear. The Defendant did not cease assaulting the sergeant until other officers intervened.

The Defendant's presentence report revealed a lengthy criminal record, including: four convictions for casual exchange of a controlled substance, a conviction for violating the requirements of the sex offender registry, seven assault convictions, a reckless aggravated assault conviction, a conviction for criminal impersonation, and a conviction for statutory rape. The report also revealed that the Defendant had previously violated the terms of probation and acknowledged membership in the Vice-Lords gang. Additionally, the Defendant was convicted of possession of cocaine in a school zone with intent to sell, which was the basis of the presentence report used in this case. See State v. Ziberia Marico Carero, No. E2015-00140-CCA-R3-CD, 2015 WL 9412836, at *1 (Tenn. Crim. App. Dec. 22, 2015), perm. app. denied (Tenn. May 5, 2016).

The trial court found that the Defendant's sentence should be enhanced based on his previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). The court also enhanced the Defendant's sentence based on his previous failure to comply with the conditions of a sentence involving release in the community, noting that the Defendant had violated probation on multiple occasions in the past. See id. § 40-35-114(8). With regard to mitigating factors, the trial court observed that the Defendant had mental health issues and that most of his violent behavior occurred years earlier, but it determined that the "mitigation is outweighed by the fact that [the Defendant] has continued to engage in [the] criminal behavior of selling drugs."

As to consecutive sentencing, the trial court determined that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major

source of livelihood.  See id. § 40-35-115(1).  The court elaborated that the Defendant only had one verified job, which lasted for a month.  The court said that it believed the Defendant's explanation that his status as a sex offender negatively impacted his ability to get a job but pointed out that the Defendant's "response to that has been to engage in the sale of narcotics, and . . . that is also supported by his membership in a criminal gang that has – uses part of its actions – the enterprise of selling illegal narcotics[.]"

The court additionally found that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk to human life was high.  See id. § 40-35-115(4).  In this regard, the court noted that the Defendant "still engages in behavior and has throughout his life [engaged] in very dangerous and risky behavior toward the lives of other human beings[.]"  The court made the additional finding that confinement for an extended period of time was necessary to protect society from further criminal conduct of the Defendant because the Defendant's history indicated that he was going to continue to engage in criminal behavior.  The court said that the question of whether the circumstances surrounding the commission of the offense were aggravated was "a little more difficult in this case."  However, the court determined that the "thing . . . that . . . is aggravated about this is the fact that this is not a one[-]time incident, but that [the Defendant] has continued to engage in this type of behavior."  With regard to whether the aggregate length of the sentence reasonably related to the seriousness of the offense, the court determined that, although it was justified in imposing a top of the range sentence, doing so would make the aggregate sentence "exceed what would justly be deserved in relation to the seriousness of the offense."  Accordingly, the trial court imposed a sentence at the bottom of the range but ordered that it run consecutively to another sentence the Defendant was serving.

At the re-sentencing hearing, it was first noted that the Defendant now qualified for sentencing as a Range II offender with his felony having dropped from Class A to Class B.  The trial court stated that it incorporated its "extensive findings" from the original sentencing hearing and reiterated that "I do find the enhancement factors apply."  However, the court clarified with regard to the enhancement factor concerning the Defendant's history of criminal convictions, that two of the Defendant's prior felonies would not be attributed against him because they were used to establish his status as a Range II offender, but that the enhancement factor still applied.  The court noted that it had "made . . . findings on mitigation before," but "d[id]n't think [the Defendant] is entitled to too many breaks because of his serious criminal history."  With regard to consecutive sentencing being warranted, the court said that the "[b]ottom line is . . . he's got a long criminal history, that he's become a professional criminal, and he's devoted his life to such criminal acts to maintain his livelihood, and that's borne out by the fact he just keeps selling drugs[.]"  The court determined that it would be justified in sentencing

the Defendant at the top end of the range but that, if it did so and imposed consecutive sentencing, "that sentence would be too long in relation to the seriousness of the offenses." Accordingly, the court again imposed a fifteen year sentence, now as a Range II offender, to be served consecutively to the Defendant's sentence in another case.

After re-sentencing, the Defendant filed a motion for new trial, which was heard and denied by the trial court. During the interim, he also filed a petition for writ of error coram nobis. In that petition, the Defendant claimed that the cell phone he was using when the offense was committed was not capable of receiving pictures and that such would indicate that the testimony of two of the State's witnesses was false. The trial court denied the petition, finding that the Defendant's claim did not constitute newly discovered evidence because the Defendant "would have known at the time of the trial that his phone would not be able to receive pictures." The court additionally noted that the two witnesses testified that they sent a picture to the Defendant, not that the Defendant received a picture on his phone – something they would have no way of knowing. The court concluded that proof the Defendant's phone could not receive pictures was not contradictory to the testimony of the two witnesses and therefore would not have resulted in a different judgment. The Defendant filed separate notices of appeal for each matter, but the cases were consolidated for disposition.[1]

## ANALYSIS

On appeal, the Defendant first argues that the trial court's imposition of a fifteen year sentence is "presumptively vindictive" and unsupported by objective factual information. He asserts that the trial court should have sentenced him to the minimum term for his conviction, as he had previously been sentenced to the minimum term when his conviction had been enhanced to a higher class.

In North Carolina v. Pearce, the United States Supreme Court held that it is a violation of due process to impose a sentence that is actually or likely motived by judicial "vindictiveness." 395 U.S. 711, 725-26 (1969). However, the presumption of vindictiveness announced in Pearce "'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" See Alabama v. Smith, 490 U.S. 794, 799 (1989) (quoting Texas v. McCullough, 475 U.S. 134, 138 (1986)). The rule in Pearce is limited to instances where there is a reasonable likelihood that the increase in the sentence is the result of actual vindictiveness on the part of the trial court. Smith, 490

---

[1] The Defendant concedes that his petition for writ of error coram nobis was untimely submitted and he provided no argument concerning the denial of the petition in this appeal.

U.S. at 801. "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." Id. at 799-800.

There is not a reasonable likelihood that the trial court's imposition of a fifteen year sentence upon re-sentencing is the product of actual vindictiveness. At the Defendant's first sentencing hearing, the State filed notice of four prior convictions that it intended to use should the Defendant be sentenced as a Range II offender. However, because the Defendant was sentenced for a Class A felony, those convictions could not be used to increase the Defendant's sentencing range. When the Defendant was re-sentenced for a Class B felony, two of his prior felony convictions were applied to support a Range II classification. Otherwise, the evidence relied on in both hearings was the same, and the trial court imposed fifteen year sentences both times – the only change being a difference in release eligibility. At the original sentencing hearing, the trial court noted that it would be "justified in sentencing [the Defendant] at the top" of the range after it analyzed the enhancement and mitigating factors. At the re-sentencing hearing, the trial court specifically clarified that the reason it only sentenced the Defendant to fifteen years was not because it did not "find those enhancement factors, but [it] thought that a sentence greater than that would be disproportionate to the offense committed." Thus, it is clear that the trial court fully considered the enhancement and mitigating factors, as well as the principles of sentencing, in reaching the sentence it imposed on the Defendant. The fact that the trial court was concerned about the Defendant's sentence being disproportionate to the offense committed clearly shows that it was not acting vindictively.

The Defendant also argues that the trial court abused its discretion in ordering that the fifteen year sentence be served consecutively to the twenty-three year sentence he was already serving. He asserts that the sentence imposed by the trial court was not justly deserved in relation to the seriousness of the offense.

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Accordingly, we review the length of the sentences ordered by the trial court under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. We, similarly, review the trial court's order of consecutive sentencing for abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying the same deferential standard announced in Bise, 380 S.W.3d at 682 to the trial court's consecutive sentencing decisions).

A trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies, including the two the trial court found at the original sentencing hearing: that the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood or that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Tenn. Code Ann. § 40-35-115(b)(1), (4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

At the re-sentencing hearing, the trial court focused its findings regarding consecutive sentencing on the Defendant's being a professional criminal, which alone is

sufficient to support the imposition of such. The court stated that the "[b]ottom line is . . . he's got a long criminal history, that he's become a professional criminal, and he's devoted his life to such criminal acts to maintain his livelihood, and that's borne out by the fact he just keeps selling drugs[.]" At the first sentencing hearing, with regard to this factor, the trial court noted that the presentence report revealed that the Defendant had a lengthy criminal history that included twenty drug-related convictions and five felony convictions. The presentence report also showed that the Defendant had only one verified job, which lasted for just a month. The court did not disbelieve the Defendant's claim that his status as a sex offender negatively impacted his ability to get a job but observed that the Defendant's response was to engage in the sale of narcotics. The court found that the Defendant's involvement in the enterprise of selling drugs was supported by his membership in a criminal gang. Upon our review, we conclude that the trial court did not abuse its discretion in imposing consecutive sentencing. Moreover, we note that the record clearly shows that the trial court was mindful of its duty to impose a sentence justly deserved in relation to the seriousness of the offense, and any claim that it did not do so is without merit.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the re-sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE